Company of America. Oral argument not to exceed 15 minutes per side. Mr. Luzco or the Good morning. I would like to reserve three minutes for rebuttal. May it please the court. My name is Mark Luzco. I represent the plaintiff's appellants, MDC Acquisition and RGH Enterprises. This is an appeal from the district court's decision to grant summary judgment in favor of travelers insurance on a coverage issue. This court reviews the district court's decision to note. This is also a diversity case. So the substantive law of Ohio applies to the dispute. There are three dates that are important in this case. The first goes back to 2001-2002 when travelers issued a commercial general liability policy and an umbrella policy to the insurance. In 2009, the companies were named in a class action in California. The plaintiff in that case was Universal Health Resources, and the allegations were that the companies violated the Telephone Consumer Protection Act and the Junk Fax Prevention Act by transmitting approximately 650,000 faxes. The plaintiff's claim was that the company had not issued a summary judgment in favor of travelers insurance on a coverage issue. The plaintiff's claim was that the company had not issued a summary judgment in favor of travelers insurance on a coverage issue. There was change. And is that the only question before us, whether there was sufficient notice of the change? Actually, Your Honor, the district court never really breached the underlying coverage issues because it concluded because the company, in its view, received notice of the changes, it did not have to breach the coverage issues other than construing the unsolicited communication exclusion itself. That was the change in the policy. That's correct. So the law of the state is that if the change in the policy was sufficiently communicated to the insured, then, in this case, there would be no coverage. That is the law of Ohio. Under Ohio law, Your Honor, and this issue was decided by the Ohio Supreme Court in about 1914 was the first case where this issue arose. Ordinarily, an insurance company doesn't have to, an insurance company could expect that the insured understand the policy provision. However, there's an exception to that rule when there is a renewal policy. When there's a renewal policy, if there's a reduction in coverage, then the insurance company is required to provide actual notice to its insured of the change in coverage. And several Ohio appellate courts have followed that rule. And this question here is whether they did provide appropriate or appellate, quote, notice. That's correct, Your Honor. I think in order for actual notice has to include meaningful notice. Well, they wrote a letter both to the company that is the insurance company wrote a letter to its insured and said that this was a change in the policy. Apparently, the letter, although received, didn't get given to an appropriate official of the company somehow. But they also accompanied that letter to the person or company that they communicated with, which was the broker for the insured, and told them the same thing. Now, that seems like a diligent effort to give notice to the insured of the change, doesn't it? Well, Your Honor, the initial letter sent was a Dear Policy Holder letter. It wasn't sent to anyone specific. It wasn't even addressed to, you know, the letter itself wasn't addressed to any other name. It sure just said Dear Policy Holder. The affidavit that Travelers filed in this case. But who was the insured? A corporation, right? There was a number of named insureds under the policy. The first named insured under the policy is RGH Enterprises Inc. The notice was sent to Edge Park Surgical, which Travelers claims in its affidavit was a DBA of RGH Enterprises. The policy is silent as to how the notice is to be provided in this situation. The only notice provision, other than for a claim, is in the event of non-renewal. And in the event of non-renewal, Travelers has an obligation to send a notice to the first named insured on the declaration page. And in this case, first named insured is RGH Enterprises Inc. No notice was sent to RGH Enterprises Inc. It was sent to Edge Park Surgical, which is a DBA of the company. And is a named insured along with 10 or 11 other named insured under the policy. And it was also sent to the insured's broker. Your Honor, it's not clear from the record what the legal relationship is between the broker and the insured or the broker and Travelers. It was sent to the broker, but there's no evidence that the broker ever sent that to the company. Other than the fact that during discovery, there was a binder of insurance papers from the broker, 570 some pages, in which there was a letter inserted into that. But again, the CFO in charge of procuring insurance coverage never received this. Didn't know anything about it. His affidavit said there was no individual at the company who knew anything about this change in coverage. And this was an important change in coverage. Well, it's a question of whether the company itself was sufficiently diligent with respect to the receipt and communication of the notice to the officials at the company. Right? I mean, the company's got to do something. They can't just say, well, you know, we don't read anything that comes in the mail to us. No. And I don't believe that's what the testimony was. No, Your Honor. We don't read it unless you send it to the CEO of the company. You know, I mean, the question here is sufficient diligence. That's one question, right? That's correct, Your Honor, and I believe that's a question of fact. It's not a question that should be decided as a matter of law in a summary judgment motion. Well, why not if it can be shown on the record that the defendant is able to prove by clear and convincing evidence that the plaintiffs had a notice under Ohio law? I guess that's the standard. And we've got this J.R. Roberts case and this free versus auto owners insurance case. What I'm not clear is it's not clear whether it has to be shown that the plaintiffs had actual notice or whether it's enough to show that the defendant sent the notice to the plaintiffs in an acceptable manner and that the text of the notice was adequate. And if that can be shown by clear and convincing evidence, is that enough under Ohio law to satisfy the requirement? I believe there has to be actual notice under Ohio law, not constructive notice. And I know the district court's opinion discusses some sort of constructive notice. Well, wait a minute. Actual notice, they'd have to send, return, receive, request it, and maybe follow up on the telephone to make sure the person actually received it and all that. They're not required to do all that. There's no statutory requirement. There's no requirement under the policy to do that, Your Honor. However, the courts have said that you need to have actual notice, and I think actual notice has to be meaningful, and you have to consider the context of what is being taken away from the company. I don't see any cases that says that there has to be actual notice. Do you have a case you can cite where it says there actually has to be actual notice and what the burden of proof is for showing that? Yes, Your Honor. The Zampedro case, which was cited, and I believe in both briefs, and cited by the district court, requires actual notice of reduction of coverage. Which one? What's the case again? It's Zampedro, I believe. How do you spell that? Z-A-M-P-E-D-R-O. And what's the citation? It's Allstate Insurance Company v. Zampedro. What's the citation? I don't have the citation right here. All right. Let's see if we can find it. But it was cited both in the briefs and it was cited by the district court in its opinion. And it does require actual notice by clear and convincing evidence, and the clear and convincing evidence was established in the Roberts case. So again, in this case, it's a factual question of whether the meaningful actual notice was given to the insured of the significant reduction in coverage, and that has to be determined at a trial where the fact finder can listen to the witnesses and explore the credibility issue. The district court seemed to have some concern over the affidavit filed by Kurt Packer, the CFO of the company, where he found that the district court found that it was carefully worded. You can't really get into a credibility issue in determining an affidavit. That could only be done through live testimony. Well, there is a case that says that an insurer must have knowledge of a change that narrows the policy's coverage, but, quote, knowledge may be imputed to the insured if the notice was presented in such a way as to call attention to any material changes in terms of the contract. That's correct, Your Honor, but in Croom, it was an individual policyholder, and his testimony was that in all likelihood he received it. This is a corporation. The same case says notice is sufficient if it is provided in a separately worded letter describing the modification, which happened here. Well, again, Your Honor, it was sent to a DBA of the company. Yeah, but they got it at the company. It came to the company, both companies, and to the personnel there. It just wasn't communicated. If you've got a system at your company that doesn't communicate anything around the company that you get, then that's not the insurance company's fault, is it? No, Your Honor, it would not be the insurance company's fault, but there's no evidence that the policy is not to read anything. Mr. Fusco? Yes, Your Honor. Did the notice go to the address that was on the policy? It did, Your Honor. It did? It did. I see that my time is up. Well, you can complete your answer unless you've already done so. I think the answer to Judge Stafford's question was yes, it was sent to the address listed in the policy. Thank you. Thank you. May it please the Court, Counsel, I'm Chuck Spivak from Minneapolis, Minnesota, representing Travelers Property Casualty Company of America. Before I get into my argument, I think there are two misconceptions created by counsel's argument that I'd like to clear up. The first has to do with this idea of actual notice. The second address is something that I think Judge Stafford has already zeroed in on, and that is this issue of whether the notice was sent to the first name insured under the policy or not at the address identified on the policy. Let me take the second one first because, Judge Stafford, I think you've already answered half of the question. It's undisputed that the notice was sent to the address listed on the policy. Counsel tries to create the impression that there's a problem because it wasn't sent to who he claims is the first name insured under the policy, which was RGH Enterprises, Inc. Instead, it was sent to Edge Park Medical. The policy identifies the first name insured as RGA Enterprises, Inc., DBA, as per ILT800, which is a reference to a policy form. The policy form ILT800 says, Named insured to read RGH Enterprises, Inc., doing business as Edge Park Surgical. And the address on the policy is 1810 Summit Commerce Drive in Twinsburg, Ohio, which is exactly where the notice was sent to. So it was sent to the specifically identified first name insured DBA, Edge Park Surgical. That's who they're doing business as. It would be who you expect that you would address the policy to at the address listed in the policy. So this attempt to create an inference that there was a problem with the notice because it wasn't sent to RGH Enterprises is belayed by the policies themselves. And the record citation to the policies is in the record, but they're generally at R36-4 to R36-8. Second, with regard to this concept of what constitutes actual notice, counsel, I believe, is trying to make a misconception that actual notice means proof of actual receipt and reading by the person to whom it was delivered. And while Ohio law may require actual notice, it's also clear under Ohio law that actual notice can be created by presumption. The presumption in the common law that a letter has been received, provided it is enclosed in an envelope, correctly addressed, stamped, and placed in the mail. And in this case, the evidence is uncontroverted to create that common law presumption of actual notice. The policy change notification and the sample language itself was placed in an envelope. It was addressed to the proper address. It was placed in the mail. And there's nothing in the record to contravene this. That constitutes the presumption of actual notice, which can be rebutted. And this court, in fact, itself held so in the Simpson v. Jefferson Standard Life Insurance case in 1972 decision of this court that's cited in Judge Dowd's order on page 10 of his order. So the point that is before this court, therefore, setting aside these misconceptions, is that the traveler's policies, in effect, at the time of this loss, all contain an exclusion, the unsolicited communications exclusion, that precludes all coverage, defense, and indemnity for these claims. And counsel acknowledged that if that exclusion is part of the policy, then there is no coverage. Their claim is that Judge Dowd erred in determining the traveler's notification of this addition to their policies was legally insufficient and that they presented no facts to raise any questions that they weren't. This single issue, again, is dispositive of the case as to travelers. The other issue is whether there is, in fact, covered property damage or advertising injury are additional hurdles for the appellant. But for travelers, they are simply additional grounds for affirmance. And as they were for Judge Dowd, rendered moot if the court affirms Judge Dowd's determination that the exclusion was properly made part of the policy. Again, as I alluded to at the beginning of my argument, the facts are undisputed that on March 11, 2005, traveler's account manager, Brenda Wenger, deposited in the U.S. Mail the policyholder notification and specimen copies of the exclusion addressed to the first named insured under the policy and that this presumption, unrebutted by any affidavit submitted by the appellant, creates a presumption of actual receipt, actual notice. Appellant's only evidence to rebut this presumption, the Parker Affidavit, does not dispute that the notification was sent to or received by Edge Park Surgical, the DBA named insured. Nor does it say that MDC never got the notice. Nor does he say that he himself never got the notice. All it says, and it's carefully drafted, and Judge Dowd found this carefully drafting to be significant because he felt that the appellant was trying to say something he could say consistent with the oath, but without actually addressing the issue of rebutting the presumption. All the affidavit says is, quote, the addition of the unsolicited communications exclusion was never sent to any individual at either company. And the answer to that is, Judge Dowd said it more artfully than I'm going to say it, and I'm going to say it rather directly, so what? The standard has nothing to do with whether it was sent to an individual. The standard has to do with whether it was properly addressed to the first named insured under the policy. And in that case, the facts are undisputed. It doesn't say an individual didn't receive it. The affidavit doesn't say an individual didn't receive it. It doesn't say that it didn't make it into the hands of an individual, which doesn't make any difference one way or another. The law is the law. Can I ask you a question about this junk mail coverage? Apparently the insurance companies have decided to exclude coverage for claims arising out of lots of faxes and junk mail. Why exactly did they start doing that? What's the problem here? They discovered something that they didn't like, and so they put in an exclusion for that. Sure. Your Honor, it was a risk they never intended to cover under the policies as they were originally written, and they won some of those cases. They lost some of those cases. One of the cases that they lost was here in Ohio, the Dandy Jim case, that decided that your receipt of a facsimile that you don't want somehow constitutes an invasion of your right to privacy. I'm still a little boggled by it, but that's what the Ohio Supreme Court says, so that's the law. So the insurance company now is what happens in a lot of situations. So they got sued? The company would get sued for invasion of the right to privacy? No, they would never get sued for invasion of the right to privacy. They would get sued for a violation of the Telephone Consumer Protection Act, which says that I can't send a fax advertisement to you unless I have an established business relationship with you or you've given me express consent to receive facsimiles. There's not a single thing that says that this is a privacy right violation. It's intended to protect against privacy rights. In fact, the reason the statute was enacted was way back when, before we had computers and e-mails, facsimile was the way to communicate. And if the fax machines were tied up, printing out free coupons to go bowling on Thursday night, that put sand in the grains of the wheels of commerce. So Congress decided that we're going to make it illegal to fill up people's fax machines with these advertisements unless you say you want to get them or unless I've got a business relationship with you that's previously established that would give me reason to believe you'd like to hear from me. So this was an effort to further a more legitimate commerce. Exactly, Your Honor. It was enacted for the purposes of commerce. And there are courts, for example, the Fourth Circuit Court of Appeals, the Seventh Circuit Court of Appeals, who have held that TCPA, the Telephone Consumer Protection Act, has nothing to do with people's privacy rights. And as a result, the privacy coverage in an insurance policy doesn't apply. Some group lobbied it through that it had a significant interest in that commerce. That's correct, Your Honor. However, some courts read into this commerce-centric statute a privacy right. You know, there are two types of privacy, three types of privacy. Privacy right that you have a privacy interest in your likeness. Privacy right that you have a privacy interest in your personal information. And a privacy right that you have a privacy interest in your right to be free from unwanted intrusions upon your seclusion. And some courts, including the Ohio Supreme Court, said that receiving a fax that you don't want somehow intrudes upon your seclusion. And then shoehorned that into coverage that talks about publication of material that violates a person's right of privacy. And in this case, even if you have a privacy right and the right to be free from unwanted intrusions upon your seclusion, that privacy right is violated by the manner of delivery, not the content of the material. So the offense says publication of material. Most courts, First Circuit, Third Circuit, Fourth Circuit, Seventh Circuit, all say this statute doesn't have anything to do with privacy. The Ohio Supreme Court and some other states said, yeah, maybe it does. It sounds like you've had this case before. Right. You've become an expert in this area. Actually, Your Honor, I argued the case in the Third Circuit and the Fourth Circuit and the First Circuit. So I'm pretty familiar with these. But some states, like Ohio, said, yeah, we're going to find coverage for this. The insurance company said, well, we never underwrote for that, so we're going to change the language to make it clear that we don't want to cover this by putting an exclusion to the policy that specifically talks about the junk fax statutes and the Telephone Consumer Protection Act. It says we're just not going to cover this. And so that's why this happened. And so what we have in this case is two types of notice that went to this insurer. First, the type of presumptive actual notice that comes from when I put something in the mail and there's no evidence to rebut the fact that it went in the mail. It's presumed that you received it. And again, at the risk of repeating myself, the affidavit in this case says nothing about the fact that I didn't put it in the mail. It doesn't say anything about the fact they didn't receive it. It just says that it was never addressed to any individual. And the answer to that is so what. But we also have actual notice in this case. The facts of this case are actually pretty quite good for us in that we're not just relying on the presumption. We're relying on the fact that they designated their broker as their agent for the purposes of negotiating the renewal of these insurance policies. And it is undisputed and, in fact, admitted that the agent received the same notification, the policyholder notification that says big, bold letters. There's going to be a reduction in your coverage. You're not going to have TCPA coverage anymore. It specifically references the Telephone Consumer Protection Act. It includes a sample of the language. That went to the broker. They admit that that language from the broker made it into their own files because they produced the notice back to us from their own files in discovery. And they acknowledge in their brief, on page 20 of their brief, that they got the material from their broker. And they forgot to tell their client. Well, I can't say. Maybe they did, maybe they didn't. Maybe they did, maybe they didn't. But they got it, and that's undisputed. And their only argument as to why receipt from the broker doesn't matter is that we got 600 pages of stuff from our broker. Failing to mention that the 600 pages of stuff they got from their broker is tabbed off by each type of policy that they're getting. And I submit the fact that they got 600 pages of material from their broker establishes why it is they shouldn't be relieved from opening up that binder and taking a look at it. Because if you're a big enough, sophisticated enough company with risks so substantial that your broker is sending you 600 pages of material on renewal for you to look at to make sure that you're getting the right type of coverage, that it's particularly egregious to say, you know, I never opened the lid to take a look at the thing, and I should be relieved from opening the lid to take a look at the thing because it was too much for me to look at. So what we have here, Your Honor, is an exclusion that on its face clearly precludes all coverage. And by all coverage, I mean both defense and indemnity. Well-settled Ohio law that while the defense may be broader than indemnity, it's not broader than the coverage. And if there's no possibility of coverage, there's no possibility for defense. And the only argument as to why this exclusion doesn't apply is because we didn't get proper notice of it. And that exclusion is absolutely unsupported by the law and by the facts. They got actual notice of it in two respects. Actual notice under the law that says that if we can prove that we mailed it, you have to rebut that presumption before the case can go forward. Well, there are quite a few federal court of appeals cases out there in this ballpark, the same kind of thing. You said you had argued the Third Circuit and so on. Yeah, in terms of whether there's coverage for TCPA, not every circuit has addressed it. The Ninth Circuit says there's no coverage applying Washington law. The Fifth Circuit says there's no coverage applying Texas law. The Seventh Circuit says there is coverage applying Missouri law. The Illinois Supreme Court has said there's coverage. The California Court of Appeals has said there's no coverage. The Massachusetts Supreme Court applying Pennsylvania law has said there is coverage. But the First Circuit Court of Appeals applying Massachusetts law has said that there isn't. The Fourth Circuit was the first case that came down, said that there is, and I argued that to the Fourth Circuit. The Seventh Circuit has done it twice. They said first that there's no coverage under Illinois law. Then the Illinois Supreme Court says, well, we think you're wrong and we think there is coverage. So then the Seventh Circuit was presented in a case under diversity asking to interpret Iowa law, and the Seventh Circuit said, Our legal system is a model of consistency. It is. You'll find this amusing, however. The Seventh Circuit gets the case the second time asking to look at it under Iowa law where there's no law, so under Erie it's trying to predict what the Iowa court's going to do. This is after the Illinois Supreme Court has smacked it down a little bit by saying you predicted what we were going to do wrong. The Seventh Circuit then said, you know, now we're looking at Iowa law and we think the Iowa Supreme Court, being the brilliant jurist that there are, will reject the reasoning of the Illinois Supreme Court and adopt the reasoning that we had in our decision before the Illinois Supreme Court came down and predicted that the Iowa Supreme Court would say that there would be no TCPA coverage. In this case, Your Honor, there would be TCPA coverage but for the exclusion because the Ohio Supreme Court has said so under Dandy Jim. But the exclusion takes us clearly out of the Dandy Jim realm because it takes out any of the language that Dandy Jim relied upon, and there is absolutely no doubt that they knew in 2005 that they were going to have this exclusion on their policy. They knew it in 2006 when it was renewed. They knew it in 2007 when it was renewed before they got sued in 2009. For those reasons, we ask that the decision of the district court be affirmed. Thank you. Thank you. Judge Clay, with respect to your inquiry about the citation, I have it. I found it in the meanwhile. It is an unreported decision. There's only a Westlaw citation available. The Packer affidavit states that the Dear Policy Holder letter was never known to anyone at the company, including him, and that he is the person responsible for procuring insurance coverage. And from 2002 through 2010, when he received the notice from travelers that this exclusion had been added to the policy during the discovery in this case, that he thought that the policies had not been changed and that there was still coverage for the FACTS program that was conducted by the company. I believe that his affidavit coupled with Ms. Wenger's affidavit creates a material issue of fact for trial and should not be disposed of in a separate issue. Okay. Thank you. Thank you. Case is submitted.